# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **EZEKIEL DAVIS,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **No. CIV 17-293-JFH-SPS** |
| | ) | |
| **CORECIVIC, INC., et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

## <u>OPINION AND ORDER</u>

Plaintiff Ezekiel Davis ("Plaintiff") is a pro se state prisoner in the custody of the Oklahoma Department of Corrections ("DOC").  He is incarcerated at Davis Correctional Facility ("DCF"), a private prison in Holdenville, Oklahoma, which is owned and operated by CoreCivic [Dkt. No. 305 at 7].  He brought this action under the authority of 42 U.S.C. § 1983, seeking monetary and injunctive relief for alleged constitutional violations occurring during his incarceration at DCF.

The DOC Defendants are Joe M. Allbaugh, David Cincotta, and Mark Knutson. The remaining CoreCivic/DCF Defendants are CoreCivic, Inc.; Warden James Yates; Assistant Warden Gentry; Chief Dorman; Willa Burney; Ms. Hamilton; Tiffany Ade; Terry Underwood; Mrs. Brill; Ms. Hassan; Dr. Frederick Sanders; Ray Larimer; Serena Brewer; Dr. Keith Ivans; Sue Burkhalter; Correctional Officer Romine; and Brittney Summer-

1

Hope.[1]

The defendants have filed numerous motions to dismiss or for summary judgment [Dkt. Nos. 239, 284, 305, and 306], and Plaintiff has filed responses to the motions [Dkt. Nos. 245, 288, 310, 311]. The defendants also have submitted special reports at the direction of the Court, in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978).

**Standards of Review**

***Motion to Dismiss***

The pleading standard for all civil actions was articulated in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). *See Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009). To avoid dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The complaint also must contain "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. A court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the plaintiff. *Id*. at 555-56. "So, when the allegations in a complaint, however true, could not raise a claim of entitlement to

---

[1] CoreCivic/DCF Defendants Deborah Courtney and Amanda Shirley were dismissed on July 2, 2019 [Dkt. No. 225]. CoreCivic/DCF Defendant Darrell L. Moore was dismissed on March 17, 2020 [Dkt. No. 253]. CoreCivic/DCF Defendants Andrea Skelton, Lotoya Edwards, and Justin Pham were dismissed without prejudice on April 8, 2020 [Dkt. No. 262].

relief," the cause of action should be dismissed.  *Id.* at 558.

A pro se plaintiff's complaint must be broadly construed under this standard. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The generous construction to be given to the pro se litigant's allegations, however, "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Notwithstanding a pro se plaintiff's various mistakes or misunderstandings of legal doctrines or procedural requirements, "if a court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so . . . ."  *Id.*  A reviewing court need not accept "mere conclusions characterizing pleaded facts."  *Bryson v. City of Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990); *see also Twombly*, 550 U.S. at 555.  The Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

### Summary Judgment

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is genuine if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is material if it "might affect the outcome of the suit under the governing

law." *Id.* In making this determination, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. A party opposing a motion for summary judgment, however, may not simply allege there are disputed issues of fact; rather, the party must support its assertions by citing to the record or by showing the moving party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c). Thus, the inquiry for this Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

**CoreCivic/DCF Defendant Brittney Summer-Hope**

Plaintiff alleges that in June 2017, Defendant Correctional Officer Brittney Summer-Hope retrieved his legal documents and told him she had read them [Dkt. No. 169 at 19]. Defendant Summer-Hope also allegedly called Plaintiff a "snitch" in the presence of other prisoners. *Id.*

The record shows that Defendant Summer-Hope's Form USM-285 for service of the amended complaint was returned unexecuted on April 8, 2019, because she no longer worked at DCF [Dkt. No. 201]. On July 2, 2019, Plaintiff was directed to show cause why Defendant Summer-Hope should not be dismissed from this action for Plaintiff's failure to serve her in accordance with Fed. R. Civ. P. 4(m) [Dkt. No. 227]. Plaintiff's response to the order alleged, among other things, that he did not have access to all his legal papers, and the defendants had been uncooperative in providing last known addresses to the United

States Marshals Service [Dkt. No. 230]. The CoreCivic/DCF Defendants, however, alleged that the last known address for Defendant Summer-Hope had been sent to the Marshals Service [Dkt. No. 231].

On April 3, 2020, Plaintiff was directed to complete a new Form USM-285 for Defendant Summer-Hope [Dkt. No. 259], and the Court reissued the summons for her on April 13, 2020 [Dkt. No. 265]. It was returned executed on June 15, 2020 [Dkt. No. 295], however, Defendant Summer-Hope did not answer the amended complaint. Although Plaintiff sought a default judgment against Defendant Summer-Hope prior to her service [Dkt. Nos. 53, 159, 160], he did not seek a default judgment against Summer-Hope after she was served. Therefore, Defendant Summer-Hope is DISMISSED WITHOUT PREJUDICE for Plaintiff's failure to prosecute pursuant to Fed. R. Civ. P. 41(b). *See Olsen v. Mapes*, 333 F.3d 1199, 1204 n.3 (10th Cir. 2003) ("Although the language of Rule 41(b) requires that the defendant file a motion to dismiss, the Rule has long been interpreted to permit courts to dismiss actions sua sponte for a plaintiff's failure to prosecute or comply with the rules of civil procedure or court's orders.").

Further, as evident below, Plaintiff failed to exhaust his claims against Defendant Summer-Hope through the DCF grievance procedure. The Court thus notes that Plaintiff's claims against her could have been dismissed for Plaintiff's failure to exhaust his administrative remedies for those claims.

**DOC Defendants Joe M. Allbaugh, David Cincotta, and Mark Knutson**

5

Plaintiff complains that Defendant DOC Director Allbaugh reviewed and approved a memorandum created by DOC General Counsel Cincotta and CoreCivic/DCF employees. The memo allegedly implemented procedures and practices for DCF that were slightly different from the DOC procedures regarding grievances (OP-090124) and access to the courts (OP-030117) [Dkt. No. 169 at 20, 41-42]. Plaintiff argues that the policy deviations were intended to impede him in his access to the courts and to medical care. *Id*. at 42.

Plaintiff specifically complains that his grievances were not file-stamped and were answered by the wrong staff members. *Id*. at 33-34. He also claims the DCF law library supervisor limited him to ten sheets of typing paper and required him to confirm that he was using the paper for legal purposes. *Id*. at 35. Plaintiff further asserts that "the General Counsel can influence whether Plaintiff receive [sic] adequate medical treatment to parole, General Counsel members have engaged in adversarial actions against the Plaintiff and their participation in a civil conspiracy against me is sufficient to deter a person of ordinary firmness in the exercise of constitutional rights." *Id*. at 42.

Plaintiff also claims Defendant Mark Knutson, DOC Director's Designee, is responsible for impartially reviewing Plaintiff's grievance appeals. *Id*. at 20. Plaintiff asserts that because of the memorandum, Knutson was able to deny his grievances without investigating them [Dkt. No. 245 at 17]. In addition, Knutson allegedly conspired with other defendants to deny Plaintiff his First Amendment rights of access to the courts, equal

6

protection, the right to be heard, and free speech [Dkt. No. 169 at 20, 32-33]. Plaintiff further contends Defendant Cincotta was "the moving force behind Plaintiff['s] not receiving adequate medical care by a qualified physician." *Id*. at 33.

DOC Defendants Cincotta, Knutson, and Allbaugh's motions to dismiss allege Plaintiff has failed to state a claim upon which relief may be granted [Dkt. Nos. 239,[2] 284[3]]. These defendants claim that deviations from prison policies did not violate Plaintiff's constitutional rights. It is well settled that creation of a prison policy does not, in and of itself, create a constitutional right to that procedure or its implementation in any particular manner. *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995). Instead, DOC procedures are implemented to "aspire to instruct subordinate employees how to exercise discretion vested by the state in the [Director], and to confine the authority of [department] personnel in order to avoid widely different treatment of similar incidents." *Id*. at 482.

Regarding the grievance process, the Tenth Circuit has held that "there is no independent constitutional right to state administrative procedures." *Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011). "Nor does the state's voluntary provision of an administrative grievance process create a liberty interest in that process." *Id*. (citing

---

[2] Defendants Cincotta and Knutson's motion for dismiss states it relies upon a special report [Dkt. No. 239], however, there are no citations or other references to the special report in the motion.

[3] Defendant Allbaugh's motion is captioned as a motion to dismiss and motion for summary judgment. The motion, however, presents no arguments for summary judgment, instead arguing for dismissal under Fed. R. Civ. P. 12(b)(6). Therefore, the Court considers the motion only under Rule 12(b)(6).

*Bingham v. Thomas*, 654 F.3d 1171, 1177-78 (11th Cir. 2011)).  *See also Butler v. Brown*, 58 F. App'x 712 (9th Cir. 2003) ("[A] prisoner has no constitutional right to prison grievance procedures.").  Accordingly, Plaintiff's claims that his rights were violated by alleged deviations from DOC grievance policy must fail.

Plaintiff also contends the DOC Defendants interfered with his right of access to the courts when DCF modified its law library and grievance polices.  Plaintiff clearly has a constitutional right of meaningful access to the courts, and he must be provided a "reasonably adequate opportunity" to present his legal claims.  *Bounds v. Smith*, 430 U.S. 817, 825 (1977); *Petrick v. Maynard*, 11 F.3d 991, 994 (10th Cir. 1993).  In a prison setting, this standard generally means prisoners must be afforded paper, writing implements, postage, etc. *Bounds*, 430 U.S. at 824-25.  The prisoner, however, must show an alleged deprivation resulted in an actual injury to his ability to pursue litigation.  *Lewis v. Casey*, 518 U.S. 343, 349 (1996).  Here, Plaintiff has cited to no particular proceeding or legal matter that he was unable to pursue because of the DOC Defendants' alleged conduct. Instead, Plaintiff complains that these defendants allowed different procedures for DCF's law library.  Because his conclusory allegations fail to demonstrate an actual injury, Plaintiff's claim against the DOC Defendants concerning access to the courts also fails.

Regarding Plaintiff's claim that Defendants Cincotta and Knutson conspired with private prison officials to modify policies in order to violate his rights, this claim also is meritless.  Conclusory allegations of a conspiracy will not suffice.  *Wise v. Bravo*, 666 F.2d

1328, 1333 (10th Cir. 1981).  To recover on a conspiracy claim under § 1983, a plaintiff

must establish an actual deprivation of his rights, in addition to proving that a conspiracy

actually exists.  *Dixon v. City of Lawton*, 898 F.2d 1443, 1449 (10th Cir. 1990).  Plaintiff's

allegations of a conspiracy, backed up with no factual showing of an agreement and

concerted action amongst the defendants, are insufficient to support such a claim.  *See Hunt

v. Bennett*, 17 F.3d 1263, 1266 (10th Cir.), *cert. denied*, 513 U.S. 832 (1994).  Here,

Plaintiff has not shown that he was deprived of any constitutional right to a particular prison

policy, nor has he shown he was denied his right of access to the courts.  Therefore, his

conspiracy claim must fail.

Plaintiff also alleges the DOC Defendants conspired to discriminate against him by

not providing him adequate medical care for his serious medical needs because he is a

"jailhouse lawyer" and "writ writer," thereby violating his equal protection rights under the

theory of a "class of one" [Dkt. No. 169 at 43].  To state a standard equal protection claim,

Plaintiff must show that a governmental decision-maker intentionally discriminated against

him because he was a member of a protected class of people.  *SECSYS, LLC v. Vigil*, 666

F.3d 678, 685 10th Cir. 2012).

> Analyzing the case through equal protection's so-called "class of one"
> doctrinal prism changes nothing.  Class of one doctrine focuses on
> discrimination not between classes or groups of persons, as "traditional"
> equal protection doctrine does, but on discrimination against a specific
> individual. *Engquist v. Oregon Dep't of Agric*., 553 U.S. 591, 601 (2008).
> Even so, the familiar principles and procedures associated with equal
> protection class discrimination doctrine apply.  *Id*. at 602 ("class-of-one

theory . . . [is] not so much a departure from" as it is "an application of" traditional equal protection principles).

*SECSYS*, 666 F.3d at 688.

To state a plausible claim under the "class of one" doctrine, Plaintiff must allege specific and detailed facts to "establish that others, similarly situated in every material respect, were treated differently" from him. *Id*. The class of one theory of liability employs a two-part test. First, Plaintiff must demonstrate that he was intentionally treated differently from other individuals with materially similar traits. *Id*. Second, Plaintiff must demonstrate that there was no rational basis for the different treatment. *A.M. v. Holmes*, 830 F.3d 1123, 1166-67 (10th Cir. 2016). *See also Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1213 (10th Cir. 2011).

Here, the Court finds Plaintiff has failed to show that Defendants Cincotta or Knutson treated him differently from other similarly-situated inmates, jailhouse lawyers, or writ writers. In fact, Plaintiff's allegations that an alleged memorandum with deviations from DOC policy fails to assert that the memo was only enforced against him. Therefore, Plaintiff's "class of one" claim is meritless.

Defendant Allbaugh also asserts that Plaintiff has failed to show Allbaugh's personal participation in any constitutional violation. "Personal participation is an essential allegation in a § 1983 claim." *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) (citations omitted). *See also Mee v. Ortega*, 967 F.2d 423, 430-31 (10th Cir. 1992).

Plaintiff must show that a defendant personally participated in the alleged civil rights violation. *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996). Supervisory status is not sufficient to support liability under § 1983. *Id. See also Polk County v. Dodson*, 454 U.S. 312, 325 (1981).

The Tenth Circuit has repeatedly held that in § 1983 actions, specific factual allegations with regard to the elements of each claim are particularly important, because "state actors may only be held liable under § 1983 for their own acts." *Robbins v. Oklahoma*, 519 F.3d 1242, 1251 (10th Cir. 2008). "[I]t is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Id.* at 1250 (citation omitted) (emphasis in original). For Plaintiff's complaint to survive dismissal, this Court must be able to read the allegations in the complaint and the requests for relief against the defendants and "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). After careful review, the Court finds Plaintiff has failed to articulate any specific allegations of Defendant Allbaugh's personal participation, and Plaintiff's complaint falls far short of this standard with regard to his Eighth Amendment claims against Defendant Allbaugh.

Next, to the extent Plaintiff seeks injunctive relief to obtain medical care from a neurologist, such relief is not available when there is no continuing violation of federal

11

law. *Green v. Mansour*, 474 U.S. 64 (1985).  Because Plaintiff has failed to state a claim for a constitutional violation against Defendants Allbaugh, Cincotta, or Knutson, Plaintiff's request for injunctive relief must be denied.

Accordingly, after careful review, Defendants Joe M. Allbaugh, David Cincotta, and Mark Knutson's motions to dismiss [Dkt. Nos. 239, 284] are GRANTED, pursuant to Fed. R. Civ. P. 12(b)(6).

**CoreCivic/DCF Defendants CoreCivic, James Yates, Terry Underwood, Willa Burney, Tiffany Ade, Mrs. Brill, Assistant Warden Gentry, Ms. Hamilton, Sue Burkhalter, Chief Dorman, Ms. Hassan, Dr. Frederic Sanders, Ray Larimer, Serena Brewer, Dr. Keith Ivens, and Correctional Officer Romine**

Defendants CoreCivic, Yates, Underwood, Burney, Ade, Brill, Gentry, Hamilton, Burkhalter, Dorman, Hassan, Sanders, Larimer, Brewer, Ivens, and Romine have filed a motion for summary judgment, alleging among other things that Plaintiff has failed to exhaust the administrative remedies for any of his claims [Dkt. No. 305].  Pursuant to the Prison Litigation Reform Act, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed.  *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n.1 (10th Cir. 2001).  "An inmate who begins the grievance process but does not

complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted).

According to Terry Underwood, DCF Grievance Coordinator, DCF utilizes the Oklahoma DOC administrative remedies policy, OP-090124 [Dkt. No. 305-2 at ¶ 5, Affidavit of Terry Underwood; Dkt. No. 305-3, DOC Policy OP-090124]. Pursuant to the DOC Offender Grievance Process, an inmate first must attempt to resolve his complaint informally by communicating with staff within three days of the incident [Dkt. Nos. 305-3; 305-4 at ¶ IV(B).][4] If that is unsuccessful, he may submit a Request to Staff ("RTS") to the appropriate staff member within seven calendar days of the incident, alleging only one issue or incident per form. *Id*. at ¶ IV(C). If the offender does not receive a response to his RTS within 30 calendar days of submission, he may submit a grievance to the Review Authority (warden's office), asserting only the issue of the lack of response to the RTS. *Id*. at ¶ IV (C)(11). If the complaint is not resolved after the response to the RTS, the offender then may file a grievance, attaching the RTS with the response from the staff member. *Id*. at ¶ V. If the grievance also does not resolve the issue, the inmate may appeal to the DOC Administrative Review Authority ("ARA"), personal identity ARA, or Medical ARA, whichever is appropriate, within 15 days of receipt of the reviewing authority's decision or

---

[4] Defendants have submitted the Grievance Policies for 2016-2017 [Dkt. No. 305-3] and for 2018 [Dkt. No. 305-4].

any amended decisions. *Id*. at ¶ VII(B). The administrative process is exhausted only after all of these steps have been taken. *Id*. at ¶ VII(D)(1).

This policy also instructs that if the inmate does not follow instructions as explained in the policy provision and on the grievance forms, the grievance may be returned to him unanswered for proper completion. If the inmate is allowed to resubmit the grievance, he must properly resubmit the grievance within ten (10) calendar days of receipt. *Id*. at ¶ VI. The continued failure to follow instructions may result in restrictions being imposed on the inmate. *Id.* at ¶ IX.

The policy further holds that an inmate who abuses the grievance process may be placed on Grievance Restriction [Dkt. No. 305-2 at ¶¶ 9-10, Underwood Affidavit]. In determining abuse of the grievance process, the appropriate reviewing authority may determine there is abuse or misuse of the grievance process and may restrict the inmate's ability to submit a grievance [Dkt. No. 305-3, 305-4 ¶ IX, OP-090124]. The grievance process sets forth the types of abuse, which include, but are not limited to:

    a.    Grievances intended to harass another;

    b.    The continual and repeated submitting of frivolous grievances (frivolous grievances are those with no basis in fact or law);

    c.    The repeated submitting of grievances or "Requests to Staff" about an issue previously addressed by staff in their written response;

    d.    Grievances about de minimis (small, trifling, no available remedy) issues;

14

e.      Repetitive grievances by multiple inmates/offenders about the same issue;

f.      An inmate/offender writing letters instead of utilizing the grievance process and failing to bring complaints by formal grievance;

g.      Continued procedural defects, such as submitting additional pages, after having been previously warned.

[Dkt. Nos. 305-3; 305-4 ¶ IX(A)(1), OP-090124].

If it is determined that the inmate has abused the grievance process, he is to be notified in writing, citing the above-listed reason(s) for placement on grievance restriction. A copy of the determination will be placed in the inmate's field file, and a copy also will be provided to the reviewing authority and the ARA. If the determination of abuse of the process is made at the first level of review, the action is appealable to the ARA [Dkt. No. 305-3 ¶ IX(A)(2); OP-090124].

The CoreCivic/DCF Defendants assert Plaintiff's amended complaint contains allegations occurring from the time of his arrival at the facility in June 2017 through July 2018. During that time, Plaintiff submitted 21 separate grievances consisting of 213 pages. [Dkt. Nos. 305-5, 305-6, 305-7, 305-8]. According to the defendants, Plaintiff did not exhaust any of the issues he has presented to this Court.

Terry Underwood, DCF Grievance Coordinator, states by affidavit that she reviewed the grievance logs for the period of May 2017 through July 2018, the time covered in Plaintiff's amended complaint [Dkt. No. 305-2 at ¶ 13]. The grievances are

summarized below:

**Grievance No. 2017-148**, submitted on June 20, 2017, was marked as "emergency/sensitive" and concerned the behavior of Plaintiff's cellmate. It was returned to him unanswered on the date of submission, because the issue was not an emergency or sensitive, and he was given ten days to correct and resubmit it. Instead, Plaintiff submitted an appeal to the DOC ARA. His appeal was returned unanswered on July 10, 2017, with a notation that the issue was not of a sensitive or emergency nature. Because Plaintiff had failed to follow proper procedures, he was out of time. No issues were exhausted through this grievance. [Dkt. No. 305-2 at ¶ 14; Dkt. No. 305-5 at 2-6].

Plaintiff was placed on grievance restriction on July 29, 2017, because of his repeated submission of multiple RTSs about issues that previously had been addressed by staff. Plaintiff's appeal of the grievance restriction was denied by the DOC ARA. [Dkt. No. 305-2 at ¶¶ 15-16].

**Grievance No. 2017-171**, submitted on July 10, 2017, concerned his issues with the law library. The grievance was returned unanswered on July 26, 2017, noting that the RTS action he had requested did not match the relief he sought with his grievance, and the grievance lacked specific information. Also, Plaintiff was on grievance restriction, and he had not complied with the process and procedures set forth in the DOC policy for grievance submission. Plaintiff was given ten days to correct and resubmit his grievance, but he failed to do so. No issues were exhausted by the grievance. [Dkt. No. 305-2 at ¶ 17; Dkt.

No. 305-5 at 7-15].

**Grievance 2017-172**, also submitted on July 10, 2017, requested shoes, a thicker mattress, and a chair for his cell and for outside recreation. The grievance was returned to him unanswered on July 26, 2017, because it was untimely and because Plaintiff was on grievance restriction. No issues were exhausted by this grievance. [Dkt. No. 305-2 at ¶ 18; Dkt. No. 40 at 23-26].

**Grievance No. 2017-194**, submitted on August 8, 2017, complained that Defendant Willa Burney, the Law Library Supervisor, did not return his legal documents within 48 hours, and Ms. Burney was untrained and unqualified to be the law library supervisor. The grievance was returned unanswered to Plaintiff on August 9, 2017, noting that the relief requested in his RTS did not match the action requested in his grievance and that requests to transfer to another facility are not grievable. In addition, Plaintiff was on grievance restriction, and he did not comply with the DOC process and procedures for proper grievance submission. No issues were exhausted by this grievance. [Dkt. No. 305-2 at ¶ 19; 305-5 at 41-49].

**Grievance No. 2017-195**, also received on August 8, 2017, requested that Law Library Supervisor Burney stop denying him copies and that she be properly trained before maintaining her position as Library Supervisor. The grievance was returned unanswered, because the RTS did not match the grievance issue, and more than one issue was raised in the grievance. In addition, Plaintiff was on grievance restriction, and proper documentation

17

was not included.  Plaintiff was advised that he could correct and resubmit his grievance within ten days, but he did not do so.  No issues were exhausted by this grievance.  [Dkt. No. 305-2 at ¶ 20; Dkt. No. 305-5 at 51-59].

**Grievance No. 2017-203**, submitted on August 9, 2017, complained that Plaintiff's placement on grievance restriction was retaliatory and asked to have the restriction removed. He also complained about the law library supervisor.  The grievance was returned unanswered on August 9, 2017, noting that Plaintiff was on grievance restriction, and he had not complied with the process and procedures spelled out in the DOC policy for proper grievance submission.  No issues were exhausted by this grievance.  [Dkt. No. 305-2 at ¶ 21; Dkt. No. 305-5 at 60-67].

**Grievance No. 2017-323**, submitted on November 30, 2017, complained about the mailroom staff.  It was returned unanswered on November 30, 2017, noting that the form was not properly completed, because Plaintiff's DOC Identification Number was not on the grievance form.  Plaintiff was given ten days to correct and resubmit the grievance.  He resubmitted the grievance on December 6, 2017, however, the resubmission failed to provide a correct affidavit related to his grievance restriction.  The resubmitted grievance was returned unanswered to him on December 12, 2017, noting the defects and that because of his failure to properly submit, he was out of time.  No issues were exhausted by this grievance.  [Dkt. No. 305-2 at ¶ 22; Dkt. No. 305-6 at 2-19].

**Grievance No. 2018-125**, submitted on May 17, 2018, complained about the law

library visits to the maximum-security housing unit and about untrained staff. The grievance was returned to him unanswered on May 22, 2018, because an answered RTS addressed to the correct staff member was not attached to the grievance. Plaintiff was advised that he could correct and resubmit his grievance within ten days, but he did not do so. No issues were exhausted by this grievance. [Dkt. No. 305-2 at ¶ 23; Dkt. No. 305-6 at 21-28].

Grievance No. 2018-126, submitted on May 17, 2018, complained about Plaintiff's receiving a disciplinary report. The grievance was returned to him unanswered on May 22, 2018, because misconducts are not grievable, he was on grievance restriction, and the submission did not comply with grievance restriction requirements. No issues were exhausted by this grievance. [Dkt. No. 305-2 at ¶ 24; Dkt. No. 305-6 at 29-36].

Grievance No. 2018-127, also submitted on May 17, 2018 complained that Ms. Hassan, the library supervisor, failed to return Plaintiff's documents in accordance with policy. Plaintiff also complained that Ms. Hassan needed to be trained. The grievance was returned unanswered on May 22, 2018, because Plaintiff was on grievance restriction, and the submission did not comply with grievance restriction requirements. Plaintiff was given ten days to correct and resubmit his grievance, however, he did not do so. No issues were exhausted by this grievance. [Dkt. No. 305-2 at ¶ 25; Dkt. No. 305-6 at 37-44].

Grievance No. 2018-128 also was submitted on May 17, 2018. It stated Plaintiff wanted his legal documents, requested information about paper allotments, and complained

about untrained staff.  The grievance was returned unanswered on May 22, 2018, because it required an answered RTS addressed to the correct staff member, and Plaintiff was on grievance restriction and had not included the required documentation.  Plaintiff was given ten days to correct and resubmit the grievance, but he failed to do so.  No issues were exhausted by this grievance.  [Dkt. No. 305-2 at ¶ 26; Dkt. No. 305-7 at 2-9].

**Grievance No. 2018-129**, was Plaintiff's fifth grievance submitted on May 17, 2018. The grievance requested that staff not be allowed to sanction inmates or restrict Plaintiff's rights to showers or outside recreation.  It was returned unanswered on May 22, 2018, noting that Plaintiff was on grievance restriction, and he had failed to include the proper documentation. He was given ten days to correct and resubmit the grievance. Plaintiff, however, did not resubmit.  No issues were exhausted by this grievance.  [Dkt. No. 305-2 at ¶ 27; Dkt. No. 305-7 at 10-17].

**Grievance No. 2018-134**, submitted on May 24, 2018, requested a transfer to a different prison facility.  The grievance was returned to him unanswered on May 30, 2018, because Plaintiff was on grievance restriction and proper documentation was not included. He was given ten days to correct and resubmit his grievance, but he failed to do so.  No issues were exhausted by this Grievance.  [Dkt. No. 305-2 at ¶ 28; No. 305-7 at 18-25].

**Grievance No. 2018-135,** submitted on May 24, 2018, concerned Plaintiff's claims of harassment and retaliation by DCF staff.   The grievance was returned unanswered on May 30, 2018, because there was no date of the incident, inmates are not

allowed to file separatees against staff, and Plaintiff failed to include an affidavit concerning his grievance restriction.  No issues were exhausted by this grievance.  [Dkt. No. 305-2 at ¶ 29; Dkt. No. 305-7 at 27-34].

**Grievance No. 2018-136** also was submitted on May 24, 2018.  The grievance alleged that the DCF law library had untrained staff.  It was returned to him unanswered on May 30, 2018, noting that the grievance was a duplicate of Grievance No. 2018-128, and he was on grievance restriction.  No issues were exhausted by this grievance.  [Dkt. No. 305-2 at ¶ 30; Dkt. No. 305-7 at 36-44].

**Grievance No. 2018-173** was submitted on July 16, 2018, after Plaintiff's grievance restriction expired on June 29, 2018.  The grievance again complained about the law library operation and objected to Plaintiff's giving his personal legal information to an inmate legal assistant. The grievance was returned unanswered to him on July 18, 2018, because the RTS issue did not match the grievance issue.  He was given ten days to correct and resubmit.

The grievance was resubmitted on July 28, 2018, and it was answered on August 1, 2018.  DOC policy OP-030115 was reviewed, and it was noted that the library staff member may assign a research assistant to help an inmate conduct research and draft pleadings that relate to conditions of confinement or post-conviction relief.  The grievance response further stated that the policy did not require Plaintiff to give his personal legal information to the inmate research assistant.  Plaintiff thus was granted

relief.  [Dkt. No. 305-2 at ¶¶ 31-32; Dkt. No. 305-8 at 2-14].

**Grievance No. 2018-180**, submitted on July 25, 2018, stated that Plaintiff wanted a trace/track placed on certified mail.  The grievance was returned unanswered on July 31, 2018, noting that the RTS did not match the grievance.  The return memorandum also warned Plaintiff that his continued abuse of the process would result in his being returned to grievance restriction.  Plaintiff was given ten days to correct and resubmit the grievance. [Dkt. No. 305-2 at ¶ 33; Dkt. No. 305-8 at 21-26].

Plaintiff resubmitted Grievance No. 2018-180 on August 8, 2018, asking why he was not provided with the completed certificate of mailing forms and asking how long he had to wait to trace/track the mail.  The resubmission was returned to him unanswered on August 13, 2018, noting that only one issue could be submitted per grievance.  No issues were exhausted by this grievance.  [Dkt. No. 305-2 at ¶ 34; Dkt. No. 305-8 at 16-20].

**Grievance No. 2018-181**, submitted on July 25, 2018, stated that Plaintiff wanted the DCF staff to stop taking adverse action against him that interfered with his access to the courts.  He also asked to be provided with legal materials such as postage and envelopes.  The grievance was returned unanswered on July 31, 2018, because the RTS was a duplicate request and the RTS did not match the grievance issue.  Plaintiff was warned that continued abuse of the process would result in his being placed again on grievance restriction.  He was granted ten days to properly resubmit the grievance.  [Dkt.

No. 305-2 at ¶ 35; Dkt. No. 305-8 at 34-39].

Plaintiff resubmitted Grievance No. 2018-181 on August 8, 2018. His requested action stated, "I would like to know where to get the envelopes I request." The resubmitted grievance was returned to him unanswered on August 13, 2018, for lack of an answered RTS addressed to the correct staff member. No issues were exhausted by this grievance. [Dkt. No. 305-2 at ¶ 35; Dkt. No. 305-8 at 28-33].

**Grievance No. 2018-182**, submitted on July 25, 2018, stated that the mail room staff were harassing him and impeding him from access to the courts. The grievance was returned to him unanswered on July 31, 2018, because the RTS issue did not match the grievance issue. Plaintiff was given ten days to correct and resubmit it. He resubmitted the grievance on August 8, 2018, asking what happened to his legal documents. After an investigation, it was determined that Plaintiff's documents were mailed by certified mail on July 5, 2018. The issue of Plaintiff's certified mail was therefore exhausted. [Dkt. No. 305-2 at ¶ 36; Dkt. No. 305-8 at 52-67].

**Grievance No. 2018-183**, submitted on July 31, 2018, concerned the library staff. It was returned to Plaintiff unanswered on July 31, 2018, because the RTS issue did not match the grievance issue. In addition, Plaintiff had requested disciplinary action against staff, and the grievance was a duplicate of Grievance Nos. 2018-128 and 2018-136. Plaintiff was warned that continued abuse of the process would result in his being placed back on grievance restriction. No issues were exhausted by this grievance. [Dkt. No.

305-2 at ¶ 37; Dkt. No. 305-8 at 56-67].

**Grievance No. 2018-188**, submitted on July 31, 2018, concerned medical clinic issues. It was returned unanswered on August 13, 2018, noting that Plaintiff had failed to complete the grievance form properly. Also, because the grievance concerned a medical issue, it should have been addressed to Ray Larimer, HSA. Plaintiff was allowed ten days to correct and resubmit the grievance, but he failed to do so. No issues were exhausted by this grievance. [Dkt. No. 305-2 at ¶ 38; Dkt. No. 305-8 at 61-67].

On August 7, 2018, Defendant Warden Yates sent a letter to Plaintiff, notifying him that he was being returned to grievance restriction for 12 months for repeated abuse of the process. Plaintiff had made repeated submission of frivolous grievances and repetitive requests to staff. [Dkt. No. 305-2 at ¶ 39].

After careful review of Plaintiff's grievance records, the Court finds that the only grievances correctly submitted by Plaintiff were Grievance Nos. 2018-173 and 2018-182. Neither of these two grievances, however, concerned the claims in this civil rights action. Plaintiff argues the defendants interfered with exhaustion when they turned the grievance process into an adversarial process by placing him on grievance restriction for no reasons that justified their allegation of abuse. After his placement on grievance restriction, the defendants allegedly refused to assist him in correcting his grievance submissions. [Dkt. No. 311 at 3]. He further asserts he failed to exhaust his administrative remedies through no fault of his own, because he was "hindered, thwarted, impeded, and frustrated from

24

the grievance process," and he is only required to exhaust available remedies.  *Id*. at 10.

"Where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust."  *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010).  Here, the Court finds Plaintiff's unsupported, conclusory allegations do not demonstrate that the defendants made the administrative remedies for his claims unavailable.

Regarding Plaintiff's request for injunctive relief from the CoreCivic/DCF Defendants, as explained above, he must establish a violation of his constitutional rights. *Rizzo v. Goode*, 423 U.S. 362, 377 (1976).  Because Plaintiff has failed to exhaust the administrative remedies for his claims, he cannot show his constitutional rights were violated.  He thus cannot be granted injunctive relief.

After consideration of the pleadings and other submitted materials, the Court is of the view that there are no genuine issues of material fact with respect to whether Plaintiff's claims are unexhausted and whether Plaintiff is entitled to injunctive relief. Therefore, summary judgment is GRANTED for CoreCivic/DCF Defendants CoreCivic, Inc.; Warden James Yates; Assistant Warden Gentry; Chief Dorman; Willa Burney; Ms. Hamilton; Tiffany Ade; Terry Underwood; Mrs. Brill; Ms. Hassan; Dr. Frederick Sanders; Ray Larimer; Serena Brewer; Dr. Keith Ivans; Sue Burkhalter; and Correctional Officer Romine.

**THEREFORE,**

1.      Defendant Brittney Summer-Hope is DISMISSED WITHOUT PREJUDICE from this action for Plaintiff's failure to prosecute.

2.      Defendants Joe M. Allbaugh, David Cincotta, and Mark Knutson's motions to dismiss [Dkt. Nos. 239, 284] are GRANTED.

3.      Defendants CoreCivic, James Yates, Terry Underwood, Willa Burney, Tiffany Ade, Mrs. Brill, Assistant Warden Gentry, Ms. Hamilton, Sue Burkhalter, Chief Dorman, Ms. Hassan, Dr. Frederic Sanders, Ray Larimer, Serena Brewer, Dr. Keith Ivens, and Correctional Officer Romine's motion for summary judgment [Dkt. No. 305] is GRANTED.

4.      All remaining pending motions are DENIED as moot.

5.      This dismissal shall count as a "PRIOR OCCASION" or "STRIKE," pursuant to 28 U.S.C. § 1915(g). *See Thomas v. Parker*, 672 F.3d 1182, 1184 (10th Cir. 2012) (holding that the imposition of a strike is appropriate when "the plaintiff's claims are dismissed in part for failure to state a claim and in part for failure to exhaust administrative remedies, and no claims are allowed to proceed on the merits").

**IT IS SO ORDERED** this 9th day of November 2020.

_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE